**Supreme Court**

No. 2013-310-C.A.

(K3/13-71A)

State                              :

v.                              :

Raymond A. Peltier.                              :

NOTICE:    This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Supreme Court

No. 2013-310-C.A.
(K3/13-71A)
(Concurrence in part and dissent in part begins on Page 12)
(Dissent begins on Page 17)

|  |  |
|---|---|
| State | : |
| v. | : |
| Raymond A. Peltier. | : |

Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**O P I N I O N**

**Justice Goldberg, for the Court.** This case came before the Supreme Court on February 4, 2015, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. The defendant, Raymond A. Peltier (defendant or Peltier), appeals from a judgment of conviction after a jury trial of one count of simple domestic assault. The trial justice subsequently denied the defendant's motion for a new trial and sentenced Peltier to one year's probation. Before this Court, the defendant argues that the trial justice erred when he allowed into evidence the fact that Peltier resisted arrest in this case, a complaint to which the defendant had entered a plea of nolo contendere immediately before the start of trial. After hearing the arguments of counsel and examining the memoranda filed by the parties, we are of the opinion that cause has not been shown, and we proceed to decide the appeal at this time. We affirm the judgment of conviction entered by the Superior Court.

**Facts and Travel**

A criminal complaint was filed against Peltier on September 19, 2012. After a bench trial in District Court, defendant was found guilty of one count of simple domestic assault and one count of resisting arrest. The defendant appealed these convictions to the Superior Court and exercised his right to a jury trial.

Prior to the commencement of the jury trial in Superior Court, Peltier entered a plea of nolo contendere to the complaint of resisting arrest. The trial justice continued the matter for sentencing after accepting the plea. During the course of the prosecutor's opening statements, defense counsel objected and moved for a mistrial when the prosecutor referenced the resisting arrest. The defense counsel contended that this was evidence of other crimes, wrongs or acts by defendant that was irrelevant and inadmissible in accordance with Rule 404(b) of the Rhode Island Rules of Evidence. The trial justice overruled defense counsel's objection and denied his motion for a mistrial. The record of this case discloses that defense counsel was notified of the state's intention to introduce evidence that Peltier resisted arrest before defendant entered a plea of nolo contendere.

The state first called the complaining witness, Kelly Thurber (Thurber), to testify. Thurber recounted that she had known Peltier for almost twenty years and that he is her daughter's father. Thurber testified that Peltier typically cared for their daughter on Wednesdays. Thurber stated that on Tuesday, September 18, 2012, she attempted, without success, to call Peltier numerous times in order to finalize their plans for the next morning. Thurber testified that on the morning of Wednesday, September 19, 2012, when Peltier did not come to pick up their daughter, she first called defendant repeatedly and then drove to his home in West Warwick with the child. At approximately 8 a.m., Thurber and her daughter walked up

a flight of stairs to Peltier's second-floor apartment, and Thurber began knocking on the window and door. After about five minutes, Peltier answered the door. Almost immediately, a verbal spat ensued. According to Thurber, when she extended her hand to separate herself from Peltier, she was pushed back by defendant and fell down a few stairs. Peltier then began to punch her and kick her. Once Peltier saw that his twenty-month-old daughter was crying and throwing herself on the floor, he abandoned Thurber and took the child inside his apartment. Thurber then called 9-1-1. Officer Joshua D. Kennedy (Officer Kennedy) of the West Warwick Police Department arrived at the location, and Thurber recounted the events to him.

The second, and final, witness was Officer Kennedy. Officer Kennedy testified that at 8:16 a.m. on September 19, 2012, he was dispatched to defendant's apartment for a domestic disturbance. Upon arriving at the scene, Officer Kennedy encountered a visibly upset Thurber standing in the driveway. Officer Kennedy called for backup when he learned that the child was inside with Peltier. Moments later three other officers arrived. Officer Kennedy testified that he made contact with defendant and told him to "calm down because he was pacing throughout inside the house." Defense counsel interposed an objection on the same grounds raised during the state's opening statement—that the testimony regarding the facts surrounding the charge of resisting arrest was inadmissible under Rule 404(b). The objection was overruled by the trial justice. Thereafter, Officer Kennedy testified that Peltier was not listening to the officers' instructions and was breathing and sweating heavily. Peltier was then advised that he was being placed under arrest for domestic simple assault and domestic disorderly conduct. Officer Kennedy instructed Peltier to place his hands behind his back, but Peltier did not comply. As the officers began to place Peltier in handcuffs, he actively resisted and tried to pull the officers to the ground. Peltier continued his resistance as the officers walked him down the stairs, and at

one point he pulled all four officers against an adjoining building—causing one officer to fall down.

Throughout Officer Kennedy's testimony, defense counsel continuously objected to the line of questioning detailing the circumstances of Peltier's arrest, and he eventually moved to pass the case. After hearing argument, outside the presence of the jury, the trial justice denied defense counsel's motion, but did grant him a continuing objection to that line of questioning. Additionally, after Officer Kennedy concluded testifying, the trial justice gave the following instruction to the jury:

> "[T]o the extent that you've heard testimony that on the morning in question relating to Mr. Peltier's, the defendant's, alleged misconduct during the attempt by the West Warwick Police to investigate the complaint by Miss Thurber and to effectuate an arrest, that conduct, of course, goes beyond the charge for which Mr. Peltier is on trial here, which is, of course, simple assault, domestic in nature. I'm instructing you that that evidence, the evidence of the alleged misconduct during the investigation and effectuating of the arrest should be considered by you only to the extent that it may bear on the defendant, Mr. Peltier's[,] state of mind at the time of the offense to which he's on trial and not for any other purpose. It is not admitted for purposes of proving the kind of person that Mr. Peltier is or bearing on his character."

The state rested, and the defense opted not to present any witnesses. During closing arguments, attorneys for both the state and defendant referenced the fact that Peltier had resisted arrest.[1] When the prosecutor suggested that Peltier's "demeanor [was not that] of an innocent man[,]" defense counsel moved for a mistrial based on the same grounds that he had previously

---

[1] Defense counsel posited to the jury that:
> "Raymond Peltier resisted arrest. He did resist arrest. An innocent person may very well resist arrest when they are falsely accused of a crime. Is it right? No, it's not right. Is it legal? It's not legal. Does it mean he's guilty of this? No. He is not guilty of assaulting her."

Also, although Peltier did not testify at trial, defense counsel argued to the jury that defendant "resisted arrest because he was angry for being arrested for something he didn't do."

argued. The trial justice denied the motion.[2] Peltier was found guilty of simple domestic assault.

On July 22, 2013, defendant's motion for a new trial was denied by the trial justice. Defense counsel indicated that one of the bases of the motion was the fact that the circumstances of his conduct in resisting arrest came before the jury and that he was "incorporating into my argument the arguments I made throughout the trial." In response, the trial justice informed defense counsel that "the [c]ourt incorporates the rulings I made throughout the trial on those issues." The trial justice then sentenced Peltier to one year of probation and required him to participate in the batterer's intervention program and substance-abuse counseling and complete forty hours of community service.[3] The defendant timely appealed.

**Standard of Review**

"In reviewing the admission or exclusion of evidence, it is well settled that '[t]he admissibility of evidence is within the sound discretion of the trial justice, and this Court will not interfere with the trial justice's decision unless a clear abuse of discretion is apparent.'" State v. Clay, 79 A.3d 832, 838 (R.I. 2013) (quoting State v. Rios, 996 A.2d 635, 638 (R.I. 2010)). When performing this abuse of discretion analysis in the context of Rule 404(b), this Court first looks to the scope of allowable proof under the rule. See Clay, 79 A.3d at 838. "Rule 404(b) states that '[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of

---

[2] Defense counsel also requested that another cautionary instruction be given. The trial justice declined to do so, stating: "I already gave them the instruction. I don't want to insult their intelligence. I told them how to consider it." Moreover, the trial justice instructed the jury during his charge that "remarks and statements or personal opinions expressed by counsel during the trial or during their opening statements and final arguments are not evidence and are not to be considered by you as evidence during your deliberations." There was no objection to the jury charge.

[3] The defendant was also sentenced at this time for the charge of resisting arrest. He received an additional consecutive year of probation, also conditioned upon his engaging in the batterer's intervention program, substance-abuse counseling, and community service.

a person in order to show that the person acted in conformity therewith.'" Clay, 79 A.3d at 838 (quoting Rule 404(b)). Conversely, if the evidence is offered "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident," it is admissible. Rule 404(b). "This Court has stated that '[t]he admissibility of evidence is within the sound discretion of the trial justice, and this Court will not interfere with the trial justice's decision unless a clear abuse of discretion is apparent.'" State v. Gautier, 950 A.2d 400, 411 (R.I. 2008) (quoting State v. Brown, 900 A.2d 1155, 1159 (R.I. 2006)). "In reviewing a trial justice's admission of Rule 404(b) evidence, this Court is 'disinclined to perceive an abuse of discretion so long as the record contains some grounds for supporting the trial justice's decision * * *.'" Clay, 79 A.3d at 838 (quoting State v. Ciresi, 45 A.3d 1201, 1211 (R.I. 2012)).

Additionally, "[e]vidence that may otherwise be admissible under Rule 404(b) is still subject to the Rule 403 [of the Rhode Island Rules of Evidence] balancing test, which excludes otherwise relevant evidence 'if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury * * *.'" Clay, 79 A.3d at 838. This is because "Rule 403 cuts across the rules of evidence and is always a consideration in a trial justice's ruling on the admissibility of Rule 404(b) evidence." State v. Rodriguez, 996 A.2d 145, 152 (R.I. 2010) (quoting State v. Gaspar, 982 A.2d 140, 148 (R.I. 2009)).

**Analysis**

On appeal, defendant's assignment of error solely relates to the admission of testimony and argument regarding the resisting-arrest charge to which defendant entered a plea of nolo contendere prior to the commencement of trial. The defendant argues that, because the assault on Thurber was completed at the time he resisted arrest, that evidence had no bearing on

defendant's state of mind when the alleged assault occurred; he further argues that the two crimes were not so interwoven as to lead to the admissibility of evidence surrounding his arrest. Accordingly, defendant asserts that it was an abuse of discretion for the trial justice to allow introduction of facts relating to the resisting-arrest charge and that this error warrants a new trial.

Specifically, defendant argues that because the conduct in this case occurred after the alleged crime—as opposed to being evidence of a defendant's prior conduct—it does not bear on the accused's "motive, opportunity, intent, plan, common scheme, knowledge, identity or absence of mistake" when committing the charged offense. However, "we have treated the list contained within the second sentence of Rule 404(b) as examples, rather than a complete enumeration, of permitted purposes." Rodriguez, 996 A.2d at 150.

Evidence of prior acts is admissible when the "prior acts are interwoven or in instances when introduction is necessary for a trier of fact to hear a complete and, it is to be hoped, coherent story so as to make an accurate determination of guilt or innocence." Clay, 79 A.3d at 838 (quoting Rodriguez, 996 A.2d at 150-51); see also State v. Colangelo, 55 R.I. 170, 173-74, 179 A. 147, 149 (1935) ("[E]vidence of other acts * * * may be received when they are interwoven with the offense for which the defendant is being tried * * *."). In this case, the record discloses that from the time Thurber arrived at defendant's apartment until the time of his arrest, less than thirty minutes had elapsed. In State v. St. Jean, 554 A.2d 206, 209 (R.I. 1989), this Court held that evidence of acts which occurred twenty-three minutes before an alleged crime was admissible because it "demonstrate[d] that [the defendant] was in a particular frame of mind." See also State v. Morey, 722 A.2d 1185, 1189 (R.I. 1999) ("Because the uncharged acts were related so closely in both time and place to the charged acts * * * committed by the defendant and were so intricately interwoven with the charged acts, their admission was proper."

citing State v. Gomes, 690 A.2d 310, 316 (R.I. 1997); State v. Jalette, 119 R.I. 614, 627-28, 382 A.2d 526, 533-34 (1978)); and United States v. Wright, 392 F.3d 1269, 1276 (11th Cir. 2004) ("[E]vidence of [defendant's resistance to arrest] prior to the discovery of the firearm gives the jury the body of the story, not just the ending. Such evidence was 'inextricably intertwined' with the charged offense."). Simply because the challenged testimony occurred moments after Peltier assaulted Thurber does not change the fact that the acts were related "closely in both time and place" and were "intricately interwoven" with the crime on trial. See Morey, 722 A.2d at 1189.

Furthermore, this Court declared admissible evidence that is "related to the defendant's consciousness of guilt with respect to the crime charged." State v. Graham, 941 A.2d 848, 861 (R.I. 2008). In fact, consciousness of guilt is incorporated within the term "state of mind." State v. Santos, 122 R.I. 799, 821, 413 A.2d 58, 70 (1980) ("This statement clearly manifests [the] defendant's consciousness of guilt, which is incorporated within the term 'state of mind.'" (emphasis added)). "[W]e have held that activities inconsistent with the defendant's claim of innocence, such as flight, constitute circumstances bearing on the question of guilt." State v. Acquisto, 463 A.2d 122, 129 (R.I. 1983) (concluding that threatening a witness had "independent relevance to prove a circumstance indicating consciousness of guilt on the part of the defendant caus[ing] it to be admissible in evidence"). We are satisfied that evidence that defendant resisted arrest likewise is indicative of his consciousness of guilt and is therefore admissible as evidence of an accused's state of mind.

Although this Court has not had the occasion to address whether evidence of resisting arrest is indicative of consciousness of guilt, other state supreme courts have dealt with the issue. In State v. Williams, 919 A.2d 90 (N.J. 2007), the defendant was charged with reckless manslaughter in connection with a shooting death. Id. at 91. The prosecution sought to introduce

evidence of the defendant's post-shooting cover-up, specifically hindering apprehension, tampering with a witness, tampering with evidence, and fabricating physical evidence. Id. at 91-92. The defendant previously had been convicted of these charges in an earlier jury trial that had resulted in a mistrial on the count of reckless manslaughter. Id. The defendant argued that any post-shooting conduct would be irrelevant to the subsequent retrial on the singular charge of reckless manslaughter. Id. at 92. The New Jersey Supreme Court disagreed and concluded that conduct that occurs after the charged offense can circumstantially support inferences about the defendant's consciousness of guilt. Id. at 96. Thus, the court determined that the defendant's post-shooting conduct was admissible to demonstrate his consciousness of guilt. Id. at 96-97 (citing 2 John H. Wigmore, Evidence in Trials at Common Law, § 276 at 122 (Chadbourn rev. 1979)); see also State v. Palmer, 962 A.2d 758, 769 (R.I. 2009) ("It is universally conceded today that the fact of an accused's flight * * *, resistance to arrest, concealment, assumption of a false name, and related conduct, are admissible as evidence of consciousness of guilt, and thus of guilt itself." quoting 2 Wigmore, § 276 at 122 (emphasis added)); People v. Sustak, 153 N.E.2d 849, 854 (Ill. 1958) (concluding that evidence of resisting arrest was properly admitted as probative of guilt).

In the case before this Court, the responding officers initially were met with a distraught victim in the driveway of defendant's apartment. The defendant was inside the apartment with his twenty-month-old daughter. When the officers first made contact with defendant, they were confronted with an agitated individual. When they attempted to effectuate an arrest, defendant actively and continuously struggled to thwart their attempts and resist arrest. The defendant continued his behavior even as the officers were escorting him down the stairs of his apartment building. This behavior is indicative of defendant's consciousness of guilt. See Palmer, 962

A.2d at 769. The fact that resisting arrest is an independent criminal act does not negate the relevance of defendant's action with respect to his state of mind at the time of the assault.

As we said in Acquisto, "a defendant has no right to be insulated from relevant truths 'even if such truths might lead the jury to draw less favorable inferences concerning [the] defendant than if they were not exposed.'" Acquisto, 463 A.2d at 129 (quoting State v. Cline, 122 R.I. 297, 331, 405 A.2d 1192, 1210 (1979)). Additionally, "[t]he defendant is not entitled to a sanitized version of the state's evidence against him [or her] * * *." State v. Pona, 66 A.3d 454, 468 (R.I. 2013). The defendant's plea of nolo contendere to the charge of resisting arrest does not insulate him from conduct that is inextricably linked to the crime on trial. Criminal conduct need not be compartmentalized into separate categories; nor can a defendant choose which category can be excluded from trial by strategically entering a plea before trial. See State v. Clark, 974 A.2d 558, 579 (R.I. 2009) ("A criminal trial is a search for the truth; it is not a game of chess." quoting State v. Oster, 922 A.2d 151, 163 (R.I. 2007)). The defendant's conduct in resisting arrest was relevant both because it was interwoven with the charged offense and because it was probative of defendant's earlier state of mind. The jury could logically infer from such evidence that defendant's conduct in resisting arrest was indicative of his consciousness of guilt. Allowing a defendant to preclude this relevant evidence by entering a plea of nolo contendere would be tantamount to allowing a defendant to sanitize the evidence that the state may present to a jury. See State v. Marmolejos, 990 A.2d 848, 852 (R.I. 2010) (declaring that the state has the right to present evidence establishing its case in chief).

The trial justice concluded that the evidence was admissible because it was interwoven with the charged offense, offered the complete story, and was indicative of the defendant's state of mind the morning of the offense. Additionally, the trial justice in this instance offered a

- 10 -

cautionary instruction to the jury on the use of the testimony regarding the resisting arrest. "The Court presumes that members of the jury follow the trial justice's instructions." State v. Whitfield, 93 A.3d 1011, 1022 (R.I. 2014) (citing State v. LaRoche, 683 A.2d 989, 1000 (R.I. 1996)). It is our opinion that any prejudice to the defendant was cured by the comprehensive cautionary instruction issued by the trial justice, which was timely, appropriate, and a model of clarity.[4] For these reasons, we see no abuse of discretion in the trial justice's decision to admit evidence of the facts regarding the charge of resisting arrest.

## Conclusion

For the foregoing reasons, we affirm the judgment of conviction of the Superior Court and return the papers thereto.

---

[4] In a passing reference, defendant contended that the evidence was admitted in violation of Rule 403 of the Rhode Island Rules of Evidence. We have consistently held that "[a] mere passing reference to an argument * * * without meaningful elaboration, will not suffice to merit appellate review." State v. Day, 925 A.2d 962, 974 n.19 (R.I. 2007) (citing and quoting Wilkinson v. State Crime Laboratory Commission, 788 A.2d 1129, 1131 n.1 (R.I. 2002) ("Simply stating an issue for appellate review, without a meaningful discussion thereof or legal briefing of the issues, does not assist the Court in focusing on the legal questions raised, and therefore constitutes a waiver of that issue.")). Accordingly, defendant's contention that the trial justice admitted the evidence in violation of Rule 403 has not been sufficiently developed for review by this Court. See id.

**Justice Robinson, concurring in part and dissenting in part.** I am pleased to concur in the opinion of the majority to the extent that it holds that the trial justice did not abuse his discretion in admitting evidence of the defendant's resisting arrest as constituting evidence of the defendant's <u>agitated</u> <u>state</u> <u>of</u> <u>mind</u> at the time of the alleged assault. In view of the very close temporal connection between the alleged simple domestic assault and the act of resisting arrest, the trial justice did not abuse his discretion in admitting the evidence for this limited purpose. However, I respectfully disassociate myself entirely from the majority's statement that the defendant's act of resisting arrest is "indicative of his consciousness of guilt" and its suggestion that consciousness of guilt and state of mind are largely indistinguishable concepts.

In the first place, I am both mystified and troubled by the choice of the majority to address an issue that is entirely unnecessary to reach—<u>viz.</u>, the issue of consciousness of guilt. Significantly, there was no discussion provided by the parties to support any contention that defendant's act of resisting arrest should have been admitted as evidence of his consciousness of guilt. Moreover, although the trial justice admitted evidence of defendant's resisting arrest, he did so with an appropriately focused instruction, which simply directed the jury to consider the resistance as revealing defendant's state of mind at the time of the alleged offense; the trial justice made no mention of consciousness of guilt. The trial justice's instruction deftly and correctly straddled the competing interests at hand—allowing the prosecution to present its case in an understandable way, while simultaneously cautioning the jury not to draw improper and unjust inferences. As a result of that instruction, the jury had ample information upon which to reach a verdict without the necessity of considering whether the act of resisting arrest was somehow indicative of defendant's consciousness of guilt. By unnecessarily addressing the issue of consciousness of guilt, the majority has disregarded our strong and oft articulated policy

- 12 -

favoring judicial restraint. See, e.g., Grady v. Narragansett Electric Co., 962 A.2d 34, 42 n. 4 (R.I. 2009) (explicitly adhering to "our usual policy of not opining with respect to issues about which we need not opine");[1] Barone v. State, 93 A.3d 938, 939 n. 1 (R.I. 2014); State v. Keenan, 68 A.3d 588, 594 (R.I. 2013).  It is especially disconcerting to me that the majority chooses to address this issue—which was not the basis of admission of the evidence in Superior Court according to the trial justice's instruction—after expressly stating in its opinion that "this Court has not had the occasion to address whether evidence of resisting arrest is indicative of consciousness of guilt * * *."

It is even more distressing that, in its entirely unnecessary discussion of consciousness of guilt, the majority seems to suggest that state of mind and consciousness of guilt are close to being synonymous.  Unquestionably, when a person takes an action prompted by his or her consciousness of guilt, that consciousness of guilt can rightly be said to be part of that person's state of mind.  See State v. Santos, 122 R.I. 799, 821, 413 A.2d 58, 70 (1980).  But state of mind is a broad and generic umbrella covering many different mental stances in addition to consciousness of guilt—including, simply by way of brief example, fear, jealousy, malice, or agitation.  Moreover, a person resisting arrest could be in one of many different states of mind at the moment when he or she resists arrest.  It is self-evident to me that, as a precondition to admissibility, there must be evidence from which a jury could infer that the state of mind of the person resisting arrest was consciousness of guilt and not one of the other myriad possible states of mind.

---

[1]     That "usual policy" of ours is consistent with the following jurisprudentially sage observation of the United States Court of Appeals for the First Circuit:  "Discretion is often the better part of valor, and courts should not rush to decide unsettled legal issues that can easily be avoided."  United States v. Gonzalez, 736 F.3d 40, 40 (1st Cir. 2013).

Although I feel strongly that the majority has rushed in unnecessarily and imprudently in reaching the issue, in view of the fact that the majority has now opined that the act of resisting arrest is indicative of a consciousness of guilt in the instant case and not simply of an agitated state of mind, I feel compelled to forcefully state that the facts of this case do not lead me to draw the same conclusion. I am not even remotely persuaded by the majority's argument, which in a conclusory manner treats the act of resisting arrest as the equivalent of fleeing from a crime scene. In reaching its conclusion, the majority cites two cases from jurisdictions that have addressed the issue, neither of which do I find convincing—viz., State v. Williams, 919 A.2d 90 (N.J. 2007), and People v. Sustak, 153 N.E.2d 849 (Ill. 1958). After thoroughly reviewing these cases, I am not at all persuaded that the act of resisting arrest as occurred in the instant case is indicative of consciousness of guilt. First, the defendant in Williams, 919 A.2d at 99, engaged in a cover-up after a shooting in which he was involved; the Supreme Court of New Jersey held that evidence of that cover-up was admissible to show a consciousness of guilt. In the instant case, however, without meaningful analysis, the majority treats defendant's act of resisting arrest as somehow being factually similar to the cover-up in Williams and thereby deserving of the same evidentiary treatment. In Sustak, 153 N.E.2d at 854, the Supreme Court of Illinois admitted evidence of resisting arrest as being indicative of consciousness of guilt, but it failed to provide a meaningful explanation as to why the act of resisting arrest was actually demonstrative of that mental state. There are myriad reasons, which the majority in the instant case does not acknowledge, and which Sustak, 153 N.E.2d at 854, does not discuss, that could inform a particular defendant's resisting arrest, including that a defendant simply felt he was being unjustly arrested or because he harbored a deep and long-standing dislike for police officers in general. Therefore, in my view, Williams and Sustak are not instructive in the instant case.

- 14 -

After long and careful perusal of the record, I can find no basis therein for the majority's inference that defendant resisted arrest because he was conscious of his own guilt. Nor have we ever opined that resistance to arrest alone is sufficient to be indicative of consciousness of guilt. It is clear to me that a person may resist arrest for a variety of reasons unrelated to consciousness of guilt.

The majority cites to this Court's opinion in State v. Palmer, 962 A.2d 758 (R.I. 2009), to support its contention that resistance to arrest is admissible as evidence of consciousness of guilt in the instant case.[2] Specifically, it points to the following language in Palmer, which is actually a quotation from a treatise on the law of evidence:

> "It is universally conceded today that the fact of an accused's flight
> * * *, resistance to arrest, concealment, assumption of a false
> name, and related conduct, are admissible as evidence of
> consciousness of guilt, and thus of guilt itself." Id. at 769 (quoting
> 2 John H. Wigmore, Evidence in Trials at Common Law, § 276 at
> 122 (Chadbourn rev. 1979)).

I do not believe that my position is inconsistent with what this Court said in Palmer. The quoted language does not state that resistance to arrest, by itself, is evidence of consciousness of guilt. I readily acknowledge that resistance to arrest coupled with flight or concealment or such related conduct might, in a different case, be sufficient to be admitted to show that a defendant was conscious of his or her guilt. However, such facts are strikingly absent from the case at bar.

What the evidence in the record in this case does disclose is that defendant was in an agitated state of mind[3] while he was engaged in very actively resisting arrest just a very few

---

[2]     It should be borne in mind that the behavior of the defendant that was at issue in this Court's evidentiary discussion in State v. Palmer, 962 A.2d 758, 768-69 (R.I. 2009), was his engaging in flight and concealment.

[3]     I note that the majority specifically recognizes that "[w]hen the officers first made contact with defendant, they were confronted with an agitated individual." I have been unable to

minutes after the confrontation with his child's mother. I perceive no abuse of discretion in the trial justice's allowance of evidence of defendant's having resisted arrest in the agitated manner that was testified to—from which evidence the jury could infer that he was in the same agitated state of mind at the time of the temporally proximate alleged simple assault for which he was on trial. Indeed, it is clear to me that the <u>only</u> logical and proper inference the jury could have reached from defendant's actions was that he was in an agitated state of mind, not that he was conscious of his guilt.

For the foregoing reasons, I concur in the judgment of the majority with respect to the defendant's resisting arrest being admissible to show his agitated state of mind, but I respectfully, yet very vigorously, dissent from every jot and tittle of the majority's discussion of consciousness of guilt.

---

find in the record any evidentiary basis for a conclusion that defendant's agitated state of mind and resistance to arrest are, as the majority states, "indicative of his consciousness of guilt."

**Justice Flaherty, dissenting.** I respectfully dissent from the opinion of the majority in this case. I do so because it is my opinion that the evidence that defendant resisted arrest was admitted in contravention of the provisions of Rules 404(b)[1] and 403[2] of the Rhode Island Rules of Evidence. For the reasons that follow, I would vacate the judgment of conviction and remand this case for a new trial.

### Rule 404(b) Should Have Barred Admission

In my opinion, this case stretches, beyond its limits, the admittedly elastic characteristics of Rule 404(b). At trial, evidence of defendant's resistance to arrest, which took place both after the alleged assault had occurred and after the complaining witness had left the scene, was admitted over defendant's objection. The mere fact that defendant may have resisted the police's efforts to arrest him fits neither into the illustrated examples that are delineated in Rule 404(b) nor the spirit of other permitted purposes. This evidence, I submit, is the classic type of evidence that Rule 404 deems inadmissible because it tends to shed light only on a defendant's character or disposition. This evidence invited the jury to reach the forbidden inference: because

---

[1] Rule 404(a) of the Rhode Island Rules of Evidence stands for the general proposition that "[e]vidence of a person's character or a trait of the person's character is not admissible for the purpose of proving that he or she acted in conformity therewith on a particular occasion * * * ." Rule 404(b) sets forth:

> "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or to prove that defendant feared imminent bodily harm and that the fear was reasonable."

[2] Rule 403 of the Rhode Island Rules of Evidence states in full:

> "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

defendant demonstrated aggressive tendencies towards the police, it is more likely he was aggressive towards the complaining witness as well and therefore guilty of assaulting her. This, in my opinion, is pure propensity evidence and it is exactly the type of evidence Rule 404 was promulgated to exclude.

In the majority's opinion, the evidence of resisting arrest should be admitted because it tended to show a relevant fact, defendant's state of mind, citing to State v. St. Jean, 554 A.2d 206, 208-09 (R.I. 1989), and because it tended to tell the complete story, citing to State v. Colangelo, 55 R.I. 170, 173-74, 179 A. 147, 149 (1935), and others.[3] There can be no argument that this Court has not been entirely consistent on the question of whether Rule 404(b)'s list of acceptable "other purposes" is exhaustive or not. Compare State v. Garcia, 743 A.2d 1038, 1050 (R.I. 2000) (noting the "general exclusionary rule of Rule 404(b)"), with State v. Rodriguez, 996 A.2d 145, 150 (R.I. 2010) ("we have treated the list contained within the second sentence of Rule 404(b) as examples, rather than a complete enumeration, of permitted purposes"). However, there is no question that this Court has invariably allowed evidence of other crimes or bad acts when those acts are "interwoven with the charged offense," and when it would "allow a trier of fact to hear a complete and, it is to be hoped, coherent story so as to make an accurate determination of guilt or innocence." State v. Gomes, 690 A.2d 310, 316 (R.I. 1997).

---

[3] The majority's opinion equates the term "state of mind," with "consciousness of guilt," to justify the admissibility of defendant's alleged resistance to arrest. To support this, the majority cites cases, whose facts I believe are far removed from this case: State v. Williams, 919 A.2d 90, 92-93 (N.J. 2007) (after a homicide, the defendant attempted to make the scene appear to be a suicide and instructed witnesses to lie to police); and People v. Sustak, 153 N.E.2d 849, 854 (Ill. 1958) (the defendant fled police and entered a tavern where he drew a weapon and wounded a responding officer). Both of these cases involved intricate post-crime conduct that was deemed admissible under the guise of "consciousness of guilt." While I need not agree or disagree with those holdings, it is my opinion their applicability to this case is marginal. Further, I agree with Justice Robinson's separate opinion that this issue was not part of the trial record.

- 18 -

In its opinion, the majority relies on St. Jean, 554 A.2d at 208. In that case, the trial justice approved the admission of evidence that, twenty-three minutes before an accident giving rise to a charge of reckless driving, an offense that has an element of mens rea, the defendant had been involved in a "'tire squealing' episode," and had come within inches of striking another vehicle.[4] Id. The Court reasoned that the temporally proximate prior incident was relevant to the defendant's state of mind with respect to the charge of reckless driving. Id. at 209. Although this Court has never said that it is only prior bad acts that are contemplated by Rule 404, the timing should be a consideration in the analysis of whether evidence is relevant. In the matter before us, the fact that defendant may have resisted arrest after the alleged assault is, in my opinion, less probative of whether he was similarly agitated at the time of the alleged assault. As defense counsel argued to the trial justice, "[a]n innocent person who is falsely accused of a crime * * * sometimes resists arrest."[5]

Further, I am not persuaded that the state needed the evidence of resisting arrest to tell a "complete and, it is to be hoped, coherent story" of the simple domestic assault. Gomes, 690 A.2d at 316. The defendant's interaction with the police happened after the alleged assault, after the complaining witness retreated to the safety of her car in the driveway, after she called 9-1-1, and after defendant had reentered his apartment. The jury had the facts before it necessary to determine defendant's guilt or innocence of simple assault, G.L. 1956 § 11-5-3, without being informed that defendant had not cooperated with the arresting officers. At trial, the complaining

---

[4]  Mens rea, Latin for "guilty mind," is "[t]he state of mind that the prosecution, to secure a conviction, must prove that a defendant had when committing a crime * * * ." Black's Law Dictionary 1134 (10th ed. 2014).

[5]  The trial justice went on to reply, "[i]f that's the case, maybe that's an explanation that can be offered by the defense." Defense counsel then correctly stated that "the defense shouldn't have to [offer an explanation]"; however, once the evidence was admitted he felt obligated to address it. In closing argument defense counsel said, "[a]n innocent person may very well resist arrest when they are falsely accused of a crime."

witness testified, as did the responding officer who testified as to the "red marks" he saw on the complaining witness's "arms and her face." There was sufficient evidence before the jury and, even if Rule 404(b) is best described as an inclusive rule, "it is not all-inclusive." United States v. Briley, 770 F.3d 267, 276 (4th Cir. 2014) (holding that admission of evidence was error because "in this instance [the contested evidence] came too close to pure propensity evidence").[6]

Indeed, it is instructive to see how the state made use of the contested evidence once it was determined to be admissible; in my opinion, it was argued that this evidence reflected on defendant's character. In the prosecutor's opening remarks he referred to the resistance to arrest and said that it would show that on the day of the incident "[the police] met with a combative person," and, in his closing argument, the prosecutor reiterated that this conduct showed defendant lacked the "demeanor of an innocent man." It is my opinion that these remarks were intended to cast light on defendant's character. Because this is prohibited by Rule 404, the evidence should not have been admitted.

### Alternatively, Rule 403 Should Have Barred the Evidence

In a case where there was only one witness to the alleged assault, the complaining witness, it is my opinion that this evidence was enormously prejudicial and should not have been admitted under Rule 403. It is axiomatic that "Rule 403 cuts across the rules of evidence and is always a consideration in a trial justice's ruling on the admissibility of Rule 404(b) evidence." State v. Mlyniec, 15 A.3d 983, 997 (R.I. 2011) (quoting State v. Gaspar, 982 A.2d 140, 148 (R.I. 2009)). Here, despite defendant's explicit and repeated arguments that Rule 403 barred any

---

[6] The majority cites United States v. Wright, 392 F.3d 1269, 1276 (11th Cir. 2004), but I do not believe that case supports its opinion. The defendant's resistance to arrest is not a key piece of evidence that "gives the jury the body of the story," it is instead the opposite; as Wright advises, it is "just the ending." Id. (holding admission of contested evidence appropriate because it was not simply the end of the story but "inextricably intertwined").

- 20 -

evidence of resisting arrest, there is nothing on the record that would support any conclusion that the trial justice performed a Rule 403 balancing test. Because we have consistently maintained that Rule 403 is implicated in a Rule 404(b) determination, it is my opinion that the failure to perform that analysis, in and of itself, is fatal.[7] See Mlyniec, 15 A.3d at 997.

It is my further opinion that, had the analysis been completed, Rule 403 nonetheless should have barred the admission of the contested evidence. Clearly, this is not an easy burden to meet. We have said that it is only "when evidence is marginally relevant and enormously prejudicial that a trial justice must exclude it." State v. Pona, 948 A.2d 941, 950 (R.I. 2008) (citing State v. Silvia, 898 A.2d 707, 717 (R.I. 2006)). However, we have held such evidence to be inadmissible when "its utility was clearly outweighed by the danger that it would confuse, mislead, and unfairly prejudice the jury." Gaspar, 982 A.2d at 149. In Gaspar, we found that evidence of prior consensual sexual encounters had little bearing on an alleged sexual assault and it "was very likely to confuse the jury and invite an emotional response." Id. Here, the defendant's resistance to arrest cast very little light on whether he had earlier assaulted the complaining witness. Instead, in my view, it encouraged the jury to make an emotional response, to associate the defendant with violent behaviors, and to agree with the state's characterization of the defendant as a "combative person" who lacked the "demeanor of an innocent man." In a case that featured limited testimony and very little physical evidence, the fact that the defendant may have been violent during the process of his arrest was, in my opinion, enormously prejudicial.

---

[7] I disagree with the majority's characterization that defendant did not properly develop his Rule 403 argument. From the record, it is clear that Rule 403 was raised and argued before the trial justice. Even though defendant's written argument on Rule 403 before this Court was sparse, it was raised in his Rule 12A statement. See Article I, Rule 12A of the Supreme Court Rules of Appellate Procedure. Because the analysis of Rule 404(b) evidence is always bifurcated with Rule 403 considerations, I believe that it was sufficiently raised to this Court.

For the reasons set forth above, I respectfully dissent from the majority opinion of this Court.



**RHODE ISLAND SUPREME COURT CLERK'S OFFICE**

*Clerk's Office Order/Opinion Cover Sheet*

**TITLE OF CASE:**      State v. Raymond A. Peltier.

**CASE NO:**      No. 2013-310-C.A.
(K3/13-71A)

**COURT:**      Supreme Court

**DATE OPINION FILED:**  May 29, 2015

**JUSTICES:**      Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:**      Associate Justice Maureen McKenna Goldberg

**SOURCE OF APPEAL:**      Kent County Superior Court

**JUDGE FROM LOWER COURT**:

Associate Justice Bennett R. Gallo

**ATTORNEYS ON APPEAL:**

For State:  Jane M. McSoley
Department of Attorney General

For Defendant:  Lara E. Montecalvo
Office of the Public Defender